IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| MARIANNE KERMAVNER, *et al.*, | ) CASE NO. 1: 15 CV 1821 |
| Plaintiffs, | ) |
| | ) JUDGE DONALD C. NUGENT |
| vs. | ) |
| WYLA, INC., *et al.*, | ) |
| | ) MEMORANDUM OPINION |
| Defendants. | ) |

This matter is before the Court upon Defendants' Motion for Summary Judgment (ECF #15) on Plaintiffs' Complaint. For the reasons that follow, Defendants' Motion is granted.

**FACTUAL AND PROCEDURAL BACKGROUND[1]**

Plaintiff Marianne Kermavner and her husband, William Kermavner filed this action against Mrs. Kermavner's former employer Wyla, Inc., Charlene W. Walls[2], Wyla's Chief Operating Officer, and Joseph Wiener, the President of Wyla. The only remaining count in the Plaintiffs' Complaint is a claim for promissory estoppel under Ohio law.

Defendant Wyla, Inc. is an independent designer and supplier of tulle, lace, nettings,

---

[1] Except as otherwise cited, the factual summary is based on the Complaint and the parties' statements of fact. Those material facts which are controverted and supported by deposition testimony, affidavit, or other evidence are stated in the light most favorable to the non-moving party.

[2] Defendant Charlene Walls is also referred to as Charlene Wilkins in some of the filings made by the parties. For consistency and clarity, this Defendant will be referred to as Ms. Walls throughout this opinion.

novelty fabrics and related finished products. It is a privately owned corporation and its shareholders include Defendants Charlene Wilkins Walls (Chief Operating Officer) and Joseph Wiener (President). Plaintiff Marianne Kermavner met Ms. Walls and Mr. Wiener when she was working as a buyer for Jo-Ann Fabrics and Wyla Inc. was a fabric vendor for which Mrs. Kermavner had responsibility. After Mrs. Kermavner was downsized from Jo-Ann Fabrics in January 2006, she was hired by Wyla as its Director of Product Development beginning April 3, 2006. While Wyla's corporate headquarters, warehousing and distribution center are in Jacksonville Florida and its other offices are in New York and Hangzhou, China, Mrs. Kermavner performed her job duties from her home in Ohio throughout her tenure with Wyla.

After its accountant notified Wyla that Mrs. Kermavner should have been classified as an independent contractor and not as an employee, Wyla informed Mrs. Kermavner that effective June 29, 2012, she would be transitioned from an employee to an independent contractor. Regardless of whether Mrs. Kermavner was an independent contractor or an employee, there was never any written contract or agreement for a specific term of employment.

Plaintiffs state that they considered Mr. Wiener and Ms. Walls to be friends and that they participated in social and family gatherings together. Defendants agree that they would get together socially with the Plaintiffs when they were in Ohio. Thus, on December 16, 2013, the Kermavners went to dinner with Mr. Wiener and Ms. Walls at a restaurant in Hudson, Ohio. At that time the Kermavners wanted to build an addition to their home, but Mr. Kermavner wanted to get some assurance that Mrs. Kermavner's job was secure after she was switched to independent contractor status. While Mrs. Kermavner was away from the table, Mr. Kermavner states that he discussed the addition and Mrs. Kermavner's future at Wyla with Mr. Wiener and Ms. Walls. In his deposition

Mr. Kermavner stated that while he didn't remember the exact words, Mr. Wiener said "her employment is good. She's got a job for as long as – as long as things are going well." Mr. Kermavner stated that Ms. Walls nodded along with Mr. Wiener, confirming what Mr. Wiener was saying. Mr. Kermavner later submitted an errata sheet to his deposition indicating that he meant to testify that Mr. Wiener stated that Mrs. Kermavner had a job "for as long as she wants." Both Mr. Wiener and Ms. Walls deny that he told Mr. Kermavner that Mrs. Kermavner would have a job for as long as things were going well or for as long as she wanted. After the dinner Mr. Kermavner told his wife that her job was secure and they could go forward with their addition. Mrs. Kermavner never followed up or confirmed this discussion with Mr. Wiener or Ms. Walls. Plaintiffs went ahead with their addition incurring debt of nearly $200,000, of which approximately $100,000 is still owed. The Kermavners' assert that they would not have gone forward with the addition or incurred the debt if Mr. Wiener "had not said what he said on December 16, 2013". (William Kermavner Declaration at ¶ 5; Marianne Kermavner Declaration at ¶ 8)

Ms. Walls spoke with Mrs. Kermavner in August 2014 to discuss changes at JoAnn Stores and Mrs. Kermavner's diminishing role at Wyla. She stated that Wyla would be reducing her pay and encouraged Mrs. Kermavner to seek product development or promotion opportunities with other companies to make up the difference.

On May 18, 2015, Ms. Walls telephoned Mrs. Kermavner to inform her that her services were being terminated. The termination was memorialized in a May 26, 2015 letter stating that her work with Wyla will end June 26, 2015.

## STANDARD OF REVIEW

Summary judgment is appropriate when the court is satisfied "that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c). The burden of showing the absence of any such "genuine issue" rests with the moving party:

> [A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any,' which it believes demonstrates the absence of a genuine issue of material fact.

*Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (citing FED. R. CIV. P. 56(c)). A fact is "material" only if its resolution will affect the outcome of the lawsuit. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Determination of whether a factual issue is "genuine" requires consideration of the applicable evidentiary standards. The court will view the summary judgment motion in the light most favorable to the party opposing the motion. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

Summary judgment should be granted if a party who bears the burden of proof at trial does not establish an essential element of their case. *Tolton v. American Biodyne, Inc.*, 48 F.3d 937, 941 (6th Cir. 1995) (citing *Celotex*, 477 U.S. at 322). Accordingly, "[t]he mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Copeland v. Machulis*, 57 F.3d 476, 479 (6th Cir. 1995) (citing *Anderson*, 477 U.S. at 252). Moreover, if the evidence presented is "merely colorable" and not "significantly probative," the court may decide the legal issue and grant

summary judgment. *Anderson*, 477 U.S. at 249-50 (citations omitted). In most civil cases involving summary judgment, the court must decide "whether reasonable jurors could find by a preponderance of the evidence that the [non-moving party] is entitled to a verdict." *Id.* at 252. However, if the non-moving party faces a heightened burden of proof, such as clear and convincing evidence, it must show that it can produce evidence which, if believed, will meet the higher standard. *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479 (6th Cir. 1989).

Once the moving party has satisfied its burden of proof, the burden then shifts to the non-mover. The non-moving party may not simply rely on its pleadings, but must "produce evidence that results in a conflict of material fact to be solved by a jury." *Cox v. Kentucky Dep't of Transp.*, 53 F.3d 146, 149 (6th Cir. 1995). FED. R. CIV. P. 56(e) states:

> When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial.

The Federal Rules identify the penalty for the lack of such a response by the nonmoving party as an automatic grant of summary judgment, where otherwise appropriate. *Id.*

Though parties must produce evidence in support of and in opposition to a motion for summary judgment, not all types of evidence are permissible. The Sixth Circuit has concurred with the Ninth Circuit that "'it is well settled that only admissible evidence may be considered by the trial court in ruling on a motion for summary judgment.'" *Wiley v. United States*, 20 F.3d 222, 225-26 (6th Cir. 1994) (quoting *Beyene v. Coleman Sec. Servs., Inc.*, 854 F.2d 1179, 1181 (9th Cir. 1988)). FED. R. CIV. P. 56(e) also has certain, more specific requirements:

> [Rule 56(e)] requires that affidavits used for summary judgment purposes be made on the basis of personal knowledge, set forth admissible evidence, and show that the affiant is competent to testify. Rule 56(e) further requires the party to attach sworn or certified copies to all documents referred to in the affidavit. Furthermore, hearsay evidence cannot be considered on a motion for summary judgment.

*Wiley*, 20 F.3d at 225-26 (citations omitted). However, evidence not meeting this standard may be considered by the district court unless the opposing party affirmatively raises the issue of the defect.

> If a party fails to object before the district court to the affidavits or evidentiary materials submitted by the other party in support of its position on summary judgment, any objections to the district court's consideration of such materials are deemed to have been waived, and [the Sixth Circuit] will review such objections only to avoid a gross miscarriage of justice.

*Id.* at 226 (citations omitted).

As a general matter, the district judge considering a motion for summary judgment is to examine "[o]nly disputes over facts that might affect the outcome of the suit under governing law." *Anderson*, 477 U.S. at 248. The court will not consider non-material facts, nor will it weigh material evidence to determine the truth of the matter. *Id.* at 249. The judge's sole function is to determine whether there is a genuine factual issue for trial; this does not exist unless "there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Id.*

In sum, proper summary judgment analysis entails "the threshold inquiry of determining whether there is the need for a trial--whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in

favor of either party." *Anderson*, 477 U.S. at 250.

## ANALYSIS

Regardless of whether Mrs. Kermavner was an employee or an independent contractor of Wyla, all parties agree that there was no written employment agreement or other contract evidencing a specific term of employment. Thus, Mrs. Kermavner's relationship with Wyla was "at-will"–either party could end the relationship at any time for any reason. *See Mers v. Dispatch Printing Co.*, 19 Ohio St.3d 100, 483 N.E.2d 150 (1985). Ohio recognizes promissory estoppel as an exception to the employment-at-will doctrine. *Id.; Wright v. Honda of Am. Mfg., Inc.*, 653 N.E.2d 381, 384 (Ohio 1995). This doctrine is applicable to employment relationships when "a promise which the employer should reasonably expect to induce action or forbearance on the part of the employee does induce such action or forbearance, [and] injustice can be avoided only by enforcement of the promise." *Mers*, 19 Ohio St.3d at 104, 483 N.E.2d at 154, quoting Restatement of Law 2d, Contracts (1973), Section 90.

To establish a claim based upon promissory estoppel in the employment context "a plaintiff must show that (1) the employer made a clear, unambiguous promise; (2) the plaintiff relied on that promise; (3) the reliance was justifiable; and (4) the reliance caused detriment to the plaintiff." *Rhodes v. R & L Carriers, Inc.*, 491 F. App'x 579, 585 (6th Cir. 2012); *citing O'Donnell v. Coulson,* 40 F.Supp.2d 446, 455 (N.D.Ohio 1998); *Wing v. Anchor Media, Ltd.,* 59 Ohio St.3d 108, 110, 570 N.E.2d 1095 (1991)

Here Defendants argue that they did not make a clear and unambiguous promise and that any reliance on it was unreasonable. While the parties disagree about whether Mr. Wiener made the alleged promises to Mr. Kermavner, for the purposes of this motion Defendants agree that the

Court must view the evidence in the light most favorable to the non-moving party. Accordingly, the Court will assume that Mr. Wiener told Mr. Kermavner that Mrs. Kermavner "would have a job for as long as things were going well" or that she "had a job for as long as she wants" which appears to be the final version of what Mr. Kermavner remembers that Mr. Wiener said.[3] In any event, Defendants argue that neither version of the statement allegedly made by Mr. Wiener constitutes a clear and unambiguous promise sufficient to support a claim of promissory estoppel and that neither could be reasonably or justifiably relied upon by Plaintiffs.

In defining the nature of a promise sufficient to give rise to a promissory estoppel exception to the employment-at-will doctrine, the Ohio Supreme Court stated that "standing alone, praise and discussion of future career development will not modify the employment-at-will relationship. Only a demonstration of detrimental reliance on specific promises of job security can create an exception to the employment-at-will doctrine." *Wing*, 59 Ohio St.3d at 110, 570 N.E.2d 1095, Syl. ¶ 2 quoting *Helmick v. Cincinnati Word Processing, Inc.*, 45 Ohio St.3d 131, 543 N.E.2d 1212, Syl.¶ 3 (1989). In *Wing*, the Ohio Supreme Court affirmed the entry of summary judgment in favor of the defendant employer on Plaintiff Wing's promissory estoppel claim. Wing asserted that his

---

[3]

Defendants object to Mr. Kermavner's edit of the alleged promise made in his errata sheet, arguing that the change is prohibited by Fed. R. Civ. P. 30(e). The Sixth Circuit interprets Rule 30(e) to forbid "one to alter what was said under oath." *Giebel v. Lavalley*, No. 5:12 CV 750, 2013 WL 6903784, at *4 (N.D. Ohio Dec. 31, 2013) quoting *Trout v. FirstEnergy Generation Corp.*, 339 F. App'x 560, 565 (6th Cir.2009) (quoting *Tuttle v. Tyco Elecs. Installation Servs., Inc.*, No. 2:06–cv–581, 2008 WL 343178, at *4 (S.D.Ohio Feb.7, 2008)). Notwithstanding the Sixth Circuit's narrow reading of Rule 30, for the purposes of this motion, the Court will consider both alleged promises.

employer's general partner and chief executive officer promised him that he could purchase equity in the company as soon as a new financing package was in place. Wing stated that he turned down several job opportunities during his tenure with the defendant. The Court determined that although Wing may have thought that a promise to buy into the company was a promise of job security, it was not a promise of continued employment and could not reasonably be relied upon as such. The Court held that a plaintiff must demonstrate that Defendant made specific promises of continued employment to support a promissory estoppel exception to the doctrine of employment at will. *Wing*, 59 Ohio St.3d 110-111, 570 N.E.2d 1095.

However, in *Helmick*, the Ohio Supreme Court reversed a grant of summary judgment for the employer on a claim of promissory estoppel finding that a pre-employment promise as well as a statement after beginning employment that she would have a job for as long as plaintiff's performance was good was sufficient to meet the promissory estoppel standard when the plaintiff discontinued other interviews for employment and stopped looking for other jobs in reliance on the promises. *Helmick*, 45 Ohio St.3d at 136-37, 543 N.E.2d at 1217.

Following *Helmick*, courts have found that promises similar to the one made in *Helmick* are too vague to meet the promissory estoppel standard. For example, in *Buren v. Karrington*, No. ooAP-1414, 2002 WL 58930 (Ohio Ct. App. Jan. 17, 2002), the Plaintiff made a three day pre-employment visit to Columbus to meet with his potential employer. After a day exploring Columbus the Plaintiff and the Senior VP of Karrington were at the VP's home on his back deck drinking beer and smoking cigars. Plaintiff states that he told the VP that he wanted this to be his last move. In response Plaintiff contended that the Senior VP told him "if you do [for Karrington what you did for your current employer] you would be here forever." The Tenth District Court of

Appeals determined that the promise could only be characterized as a generalized statement of possible and future career opportunities and not a clear promise of employment until retirement. Further, the Court noted that since the statement was made during a casual conversation at the VP's home over beer and cigars, the plaintiff could not reasonably rely upon the promise. *Id.* at *3.

Similarly, in *Lake v. Wolff Bros. Supply, Inc.*, No. 63959, 1993 WL 462866 (8th Dist. Ohio Ct. App. Nov. 10, 1993), the plaintiff alleged that his former employer had promised him long term employment during his pre-employment interview when the employer stated, "don't worry, if you do this well you will have this position forever" and "with this kind of partnership, you will have a job until you retire." The Eighth District Court of Appeals determined that the employer's statements were too vague to constitute specific promises of employment until retirement. Because the statements were merely "representations of future benefits or opportunities made in the absence of a specific promise of employment for a specific term, the statements do not alter the at-will employment contract." *Id.* at *6.

In *Boggs v. The Scotts Company*, 2005 WL 647560, 2005 Ohio 1264, (Ohio Mar. 22, 2005), the plaintiff asserted that she met with her supervisor and the company's senior VP who told plaintiff that she was an integral part of the team, would retain her managerial role and that her position was secure. Plaintiff's growing concerns with her treatment at the company prompted another meeting with her supervisor in which she was further assured that her position was secure and she would retain her position. The Tenth District Court of Appeals agreed with the trial court finding that the statements were only statements of general praise which did not rise to the level of a specific promise of continued employment sufficient to form the basis of a promissory estoppel claim. *Id.* at.*9.

Finally, in 2012, the Sixth Circuit affirmed dismissal of a plaintiff's promissory estoppel claim because plaintiff's allegation that his employer promised him employment until retirement was not "clear and unambiguous" because: "[a]ccording to Ohio law, the promise at a minimum not only must be sufficiently clear and unambiguous, but also must promise 'continued employment for a specific period.' " *See Steele v. Mara Ents., Inc.*, 2009 WL 3494847, at *3 (Ohio Ct.App. Oct. 29, 2009). An employer's promise of continued employment until some unspecified date, such as death or retirement, does not satisfy this requirement." *Rhodes v. R & L Carriers, Inc.*, 491 F. App'x 579, 585 (6th Cir. 2012).

In this case, both of the alleged promises are open ended or subject to vague limits – "as long as things are going well." The statements are vague because no specific term of promised employment is defined. "Terms such as 'long term,' 'long haul,' and 'long run' are not 'definite and certain' and thus, cannot support a claim for promissory estoppel." *Mazzitti v. Garden City Group, Inc.*, 2007 WL 1847688 at *10 (Ohio 10 Dist.Ct.App. June 28, 2007)(citations omitted). Terms such as forever, long term, and until I retire "reflect an indefinite period of time and are dependent upon subjective interpretation." *Lake*, 1993 WL 462866 at *4.

More troubling is that the alleged promise of indefinitely continued employment in this case was made not to the employee but to the employee's spouse. All of the cases cited by both parties and the cases discussed herein concern promises made directly to the employee. Mrs. Kermavner acknowledges that these alleged promises were not made to her, she never heard them, they were never reiterated to her by Mr Wiener when she returned to the table, nor did she confirm

them with Ms. Walls or Mr. Wiener.[4] Further, the fact that this indefinite promise was made to Mr. Kermavner in a non-business setting in a casual conversation at a social outing while Mrs. Kermavner was in the bathroom makes any reliance on that alleged promise of continued employment for "as long as she wants" or "as long as things are going well" patently unreasonable. Thus, the Court finds that after examining the evidence in the light most favorable to Plaintiffs, Plaintiffs have failed to demonstrate a "clear and unambiguous" promise of continued employment or that reliance on the promise was reasonable or justifiable in these circumstances.

## CONCLUSION

For the reasons set forth above, Defendants' Motion for Summary Judgment (ECF #15) is granted. This action is terminated.

IT IS SO ORDERED.

*/s/ Donald C. Nugent*
DONALD C. NUGENT
United States District Judge

DATED: *March 28, 2017*

---

[4] The parties have not cited, nor has this Court found, any case involving a promissory estoppel claim brought by a spouse against his spouse's employer for promises made to the non-employee spouse involving the employee spouse's employment. While the families of employees in situations where an employee was terminated despite the employee's claim of an employer promise of continued employment feel the detrimental effects of the termination, the promissory estoppel claim belongs to the employee. Here however you have an employer making a promise to an employee's spouse about the employee spouse's job security. The fact that there is no precedent for such a claim highlights how tenuous it is.